# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Buzzballz, LLC,

    Plaintiff

v.

MPL Brands NV, Inc. d/b/a Patco Brands,

    Defendant

Case No.: 2:24-cv-00548-JAD-BNW

**Order Granting Defendant's Motion to Transfer Venue and Denying as Moot Motion for Leave to File Supplemental Authority**

[ECF Nos. 18, 32]

    Plaintiff Buzzballz, LLC manufactures premade cocktails sold in a patented spherical container. It sues MPL Brands NV, Inc. d/b/a Patco Brands for patent infringement, alleging that its "Big Sipz" product is sold in a similar round bottle. Patco moves to transfer this case to the Northern District of California, arguing that while Patco is headquartered in Nevada, its principal place of business and all relevant witnesses and evidence are located in Northern California, and Patco's declaratory-relief action on the same patent is already proceeding there. Buzzballz opposes, arguing that the first-to-file rule doesn't support a transfer and it will be inconvenienced by the move. Patco also seeks leave to file supplemental authority in the form of an order from a trademark-infringement case involving the same products that Buzzballz filed against Patco in the Western District of Texas. In that order, the Texas court granted Patco's motion to transfer that case to the Northern District of California.

    I take judicial notice of the outcome of the Texas court's order and consider it only so far as it shows that all relevant cases between these parties (except for this one) are now proceeding in California, and I would have done so regardless of whether Patco supplied it as supplemental authority. So I deny as moot Patco's supplemental-authority motion. And I find that transferring

this case to the Northern District of California will best serve judicial economy—particularly now that two similar cases are now proceeding in that district—and will be far more convenient for Patco, and at least as convenient as this district for Buzzballz, a Texas-based company with no significant ties to Nevada. So I grant Patco's motion and transfer this case to the Northern District of California.

**Procedural History**

Buzzballz is a limited-liability company located in Dallas, Texas.[1] Patco is incorporated in Nevada, but its principal place of business is in Sausalito, California.[2] Both companies sell premade cocktails in spherical containers. In 2023, the United States Patent and Trademark Office (USPTO) issued U.S. Patent No. 11,738,904 (the '904 patent), containing six claims related to Buzzballz's containers.[3] When Patco started selling "Big Sipz," a collection of premade cocktails packaged in a similarly stout, round container, Buzzballz filed suit in the Western District of Texas alleging that Patco infringed on Buzzballz's trademark, trade dress, and '904 patent.[4] Before Patco filed an answer in that case, Buzzballz amended its complaint to remove its patent claims, leaving only trademark-infringement claims.[5]

Patco then filed suit against Buzzballz in the Northern District of California, seeking a declaratory judgment of noninfringement for the '904 patent and asserting an unfair-competition

---

[1] ECF No. 1 at ¶ 1.
[2] *Id.* at ¶ 2.
[3] ECF No. 23 at 8.
[4] *Id.* at 9; *Buzzballz, LLC v. MPL Brands NV, Inc. d/b/a Patco Brands*, Case No. 1:23-cv-01115-RP (W.D. Tex.).
[5] ECF No. 23 at 8; ECF No. 10 in Case No. 1:23-cv-01115-RP (W.D. Tex).

claim under California law.[6]  About two weeks after Patco filed its noninfringement action, the USPTO issued U.S. Patent No. 11,932,441 (the '441 patent) containing twenty claims—some of which directly overlap with the '904 patent—concerning Buzzballz's containers.[7]  A day later, Buzzballz filed this infringement action in Nevada's District Court based on the '441 patent.[8]  And ten days after the patent issued, Patco amended its California complaint to add a new declaratory-judgment claim for noninfringement of the '441 patent and another unfair-competition claim based on Buzzballz's prosecution of that patent.[9]  Buzzballz has moved to dismiss that case, arguing that the Northern District of California lacks personal jurisdiction over it.[10]

In November 2023, Patco moved to transfer Buzzballz's Texas action to the Northern District of California, arguing that it has no significant ties to the Western District of Texas and all of its witnesses and evidence are in Northern California.[11]  On July 2, 2024, the Texas court granted that motion and transferred the case.[12]  Patco moves for the same relief here, arguing that this case could have been brought in California's Northern District and it would be far more convenient to litigate there because Patco's principal place of business and all witnesses with

---

[6] ECF No. 23 at 10; *MPL Brands NV, Inc. v. Buzzballz, LLC*, Case No. 3:24-cv-01282-JD (N.D. Cal.).

[7] *See* ECF No. 1-1 (the '441 patent).

[8] *See* ECF No. 1.

[9] ECF No. 12 in Case No. 3:24-cv-01282-JD (N.D. Cal.).

[10] *See* ECF No. 30 in Case No. 3:24-cv-01282-JD (N.D. Cal).  The California case has been stayed pending the outcome of the transfer motions in this case and the Texas action.  *See* ECF No. 40 in Case No. 3:24-cv-01282-JD (N.D. Cal).

[11] ECF No. 12 in Case No. 1:23-cv-01115-RP (W.D. Tex.).

[12] ECF No. 34 in Case No. 1:23-cv-01115-RP (W.D. Tex.); *see also Buzzballz, LLC v. MPL Brands NV, Inc.*, 4:24-cv-04004-HSG (N.D. Cal) (transferred case).

knowledge of the design of its allegedly infringing product are located in that district.[13]  Patco also asks that I consider the Texas court's transfer order as supplemental authority to assist in my analysis.[14]

Buzzballz opposes both motions, contending that Patco is incorporated in Nevada, markets itself as being based in Las Vegas, and has some employees here.[15]  It also contends that this is a more convenient forum for its Texas-based team, as Nevada is closer to Dallas than Northern California.[16]  And it opposes my consideration of the Texas order because it is not binding authority and its reasoning was based on facts specific to litigating in the Western District of Texas (where no party resides) that are irrelevant to litigating here, where Patco is admittedly incorporated.[17]

## Discussion

**A.     Patco's motion for leave to file supplemental authority is denied as moot.**

Under this district's local rule 7-2(g), "a party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause."[18]  Patco asks to supplement its transfer motion with the Texas court's order granting it that same relief in Buzzballz's trademark-infringement case.[19]  It argues that the Texas court's reasoning will be useful in resolving the motion to transfer filed in this case.[20]  Buzzballz opposes, arguing that the

---

[13] ECF No. 18.
[14] ECF No. 32.
[15] ECF No. 23.
[16] *Id.*
[17] ECF No. 33.
[18] L.R. 7-2(g).
[19] ECF No. 32.
[20] *Id.*

Texas order is "neither controlling nor precedential in this district" and "will not aid the court in deciding" Patco's motion "because the Texas action involved different legal and factual circumstances."[21]

I take judicial notice of the Texas court's order[22] and would have done so regardless of whether Patco filed a motion to supplement, as the proceedings in that case closely mirror the ones unfolding here. But the usefulness of the Texas order ends there, as it relies on facts and circumstances that differ from those that warrant transfer here. So I take judicial notice of the order's result—that the case was transferred to California—but do not rely on that court's analysis when considering Patco's transfer motion. I thus deny Patco's motion for leave to file supplemental authority as moot.

**B.  Transferring this case to the Northern District of California will best serve the parties and judicial economy.**

*1.  28 U.S.C. § 1404(a) gives courts discretion to transfer cases in the interest of justice.*

28 U.S.C. 1404(a) authorizes courts to "transfer any civil action to any other district or division where it might have been brought" "for the convenience of parties and witnesses [and] in the interest of justice."[23] Transfer decisions lie within the district court's discretion and require an "individualized, case-by-case consideration of convenience and fairness."[24] This analysis requires the court to weigh multiple factors like:

> (1) the location where the relevant agreements were negotiated and executed, (2) which state is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties'

---

[21] ECF No. 33 at 3.

[22] *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record").

[23] 28 U.S.C. § 1404(a).

[24] *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citation omitted).

5

contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.[25]

Buzzballz doesn't deny that this case could have been brought in California's Northern District,[26] so I focus only on whether transferring the case would best serve the interests of justice and convenience of the parties.

### 2. *The parties dispute the propriety of litigating in this district.*

Patco admits that it is incorporated in Nevada but attests that any meaningful contacts with this state end there. It sells its products here, but "its sales . . . in this District are miniscule compared to product sales in California."[27] And it has five remote employees who voluntarily live in Nevada, but Patco does not require that they live here; Patco doesn't own, lease, or rent any Nevada facilities for those employees;[28] and their work isn't relevant to this patent dispute.[29]

But across the state line in California, Patco "maintains its executive offices, laboratory office, research-and-development center, and design studio at its corporate headquarters" in Sausalito, a city just north of San Francisco.[30] The company's operations, sales, and finances are all managed from Sausalito; it has a warehouse there; and all of Patco's "label designers, flavor

---

[25] *Id.* at 498–99.

[26] ECF No. 23 at 6.

[27] ECF No. 18 at 10 (citing ECF No. 18-1 at ¶ 9 (declaration of Todd Elsberg, Patco's chief financial officer)).

[28] ECF No. 18-1 at ¶¶ 5–6. Patco admits that it "has a mail[-]handling agreement with Regus in the District of Nevada, where it is also able to use a conference room if requested," but avers that it does not "rent, own, cooperate, or lease, any other office space, production facilities, warehouses, or other real estate in the District of Nevada." *Id.* at ¶ 4.

[29] ECF No. 18 at 20–21.

[30] ECF No. 18-1 at ¶ 3.

6

chemists, and product molds" are located close to the Northern District, too.[31] Patco's witnesses with knowledge about the design, marketing, and sale of the allegedly infringing Big Sipz product reside in California.[32] Thus, contends Patco, the Northern District of California would be the most convenient place to litigate this action because all of its relevant witnesses and evidence are located there.

Patco also points to the fact that Buzzballz admittedly has minimal connections to this forum. And Buzzballz does nothing to dispute that representation, acknowledging throughout its opposition to transfer that its 500 employees, all documents and records related to the '441 patent, and its expected witnesses are located in Texas.[33] It essentially argues that this district is the closest one to its headquarters that it could sue Patco in (as Patco has few ties to Texas), so it is more convenient for Buzzballz to litigate here.[34]

---

[31] *Id.* Buzzballz correctly points out that Patco's "label designers, flavor chemists, and product molds" are located in Fairfield, California, which lies in the Eastern, not Northern, District. ECF No. 23 at 20. Patco responds that most of its activities flow from Sausalito, which is located in the Northern District, and contends that "Buzzballz's reasoning disregards the obvious increase in convenience for witnesses travelling from Fairfield to San Francisco, instead of to Las Vegas." ECF No. 24 at 9 n.1.

[32] ECF No. 18-1 at ¶¶ 3, 7.

[33] *See* ECF No. 23 at 20 ("Buzzballz's only offices are in Texas with more than 500 employees, including the entire executive team, located there."); *id.* at 21 (noting that "Buzzballz's documents and records are located in Texas, including in connection with the filing and prosecution of the '441 patent," and that "Buzzballz's potential witnesses are expected to be located in Texas") (cleaned up).

[34] *Id.* at 21.

### *3. The relevant factors weigh in favor of transferring this case.*[35]

On balance, I find that this case should be litigated in the Northern District of California. Neither party has strong ties to this district. Buzzballz chose to file suit here because it was the closest place to its headquarters where venue properly lies for Patco, but Buzzballz itself admittedly has very few connections to this forum. I give little weight to the plaintiff's forum choice in these circumstances. There is also little connection to this forum and Buzzballz's cause of action: the only things that Buzzballz points to is Patco's sales of its products, its incorporation, and its five remote employees that fulfill orders here.[36]

But Patco avers that its remote employees—who are located in Nevada solely because they want to be, not because Patco has stationed them here—have no relation to the facts regarding any alleged infringement of Buzzballz's patent, and Buzzballz offers no reasoning to suggest otherwise. And while Patco sells its products here, it avers that "Nevada constitutes around 2% of market sales for [its] Big Sipz product," while "California constitutes around 20%" of its sales.[37] So that reasoning supports this case being filed in either district. And while Patco's incorporation in this state suffices to establish proper venue in this district, Buzzballz does not explain how that fact relates specifically to its patent-infringement claim or how it inflates the significance of this district above that of California's Northern District. So neither

---

[35] I do not consider the first two *Jones* factors (the location where the relevant agreements were negotiated and which state is most familiar with the governing law) because they aren't relevant to this dispute. No agreements were made between the parties, and the federal courts, regardless of the state in which they sit, are equally familiar with federal patent law (though one can imagine that the Northern District of California, which encompasses the tech mecca of Silicon Valley, may have occasion to encounter patent cases at a higher rate).

[36] ECF No. 23 at 20–21.

[37] ECF No. 24-1 at ¶ 3.

Buzzballz's choice of forum nor this forum's relation to its cause of action support keeping this case in Nevada.

The costs of litigation also militate in favor of transfer. As Buzzballz itself points out, the inconvenience to its representatives and witnesses boils down to an extra hour of travel to get to San Francisco rather than Las Vegas.[38] Buzzballz argues that Patco merely seeks to shift the travel burden between parties, contending that the amount of time Patco will save by litigating in the Northern District (about an hour) is about the amount of extra time Buzzballz will have to add to its journey to get to Patco's chosen forum.[39] But Buzzballz fails to consider the costs of bringing two parties to a district in which no one is truly at home: double the car rentals, hotels, and plane tickets. When weighing the overall burdens of litigation in this case, Patco's proposed forum lessens them considerably for Patco, and only minimally increases them for Buzzballz.

The potential inability to compel attendance of unwilling nonparty witnesses tips slightly in Patco's favor, too. Patco identifies one nonparty witness—Amcor, Patco's Big Sipz manufacturer—that is located California and has no facilities in Nevada.[40] Because Buzzballz's patent involves claims related to the manufacture of its container, Patco argues that "details from Amcor regarding the manufacture of [Patco's] accused products may be relevant to this dispute."[41] Buzzballz contends that Amcor is a national manufacturer and Patco hasn't shown that it "would be unwilling to appear in court on behalf of its customer."[42] But even the potential

---

[38] ECF No. 23 at 24.

[39] *Id.*

[40] ECF No. 18 at 12 (noting that Amcor's Fairfield, California facility is "where molds for Patco's accused beverage containers are located").

[41] *Id.* at 22.

[42] ECF No. 23 at 22.

of Amcor being an unwilling witness tips this factor in Patco's favor because Buzzballz hasn't identified any potential witnesses of its own that could be compelled to travel here but couldn't be compelled to travel to San Francisco.[43] So this factor minimally tips the scale towards transfer.

Finally, the availability of evidence also weighs in favor of moving this case to the Northern District of California. Patco argues that the discoverable information about its alleged infringement of Buzzballz's patent can be found in California, not here. The Federal Circuit has noted that "in patent-infringement cases, the bulk of the relevant evidence usually comes from the accused infringer" and thus, "the place where the defendant's documents are kept weighs in favor of transfer to that location."[44] Buzzballz responds that Patco has alleged several affirmative defenses that will require its production of evidence too. But Buzzballz's evidence isn't located here, it's located in Texas. Because that venue isn't an option here, Buzzballz's burden of producing evidence is largely the same whether the case proceeds in Nevada or in California. But transferring the case to California would reduce the only evidentiary burden that can be reduced: Patco's.

Buzzballz also contends that most of the discoverable information in this case will be produced electronically, so evidentiary burdens will be the same "regardless of the geographic location."[45] Besides, any physical evidence in this case is "small, easily transported, and the parties will likely require production of only a nominal quantity of samples."[46] But that physical

---

[43] ECF No. 24 at 13.

[44] *In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (cleaned up).

[45] ECF No. 23 at 23 (citing *Hadnagy v. Moss*, 2023 WL 8622375, at *5 (D. Nev. Dec. 12, 2023)).

[46] *Id.*

evidence exists, and Patco avers that it has physical, discoverable information "regarding the research and development of the Big Sipz product" in its Sausalito headquarters.[47] So this factor, too, slightly weighs in favor of transfer.

In sum, very little ties this case to Nevada. Neither party has convenient connections to this forum, none of the evidence or witnesses related to this action are here, and this district doesn't have subpoena power over any relevant nonparty witnesses. Both parties would have to expend time and resources to travel and litigate this case here. But in the Northern District of California, evidence and witnesses for Patco will be easier to come by, at no meaningfully greater inconvenience to Buzzballz. So I find that the overall convenience of the parties and the interest of justice compel the transfer of this case to the Northern District of California.

## C.     The first-to-file doctrine doesn't merit a different result.

Both parties argue that the first-to-file rule applies but disagree about which action was actually filed first and thus about who would benefit from its application. In patent cases, Federal Circuit law guides the application of the first-to-file rule.[48] The rule is grounded in federal comity "intended to avoid conflicting decisions and promote judicial efficiency[] that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions."[49] "Under the first-to-file rule, a district court may

---

[47] ECF No. 24-1 at ¶ 7; *see also Secured Mail Sols., LLC v. Advanced Image Direct, LLC*, 2013 WL 8596579, at *4 (C.D. Cal. Jan. 30, 2013) ("Even in the age of electronic document storage and the Internet, courts favor transfer to the district where relevant documents are physically located.").

[48] *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013) (noting that "[r]esolution of whether the second-filed action should proceed presents a question sufficiently tied to patent law that the question is governed by [Federal Circuit] law" (citing *Elecs. For Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345–46 (Fed. Cir. 2005))).

[49] *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (citations omitted).

11

choose to stay, transfer, or dismiss a duplicative later-filed action, although there are exceptions and the rule is not rigidly or mechanically applied—an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts."[50]  When exercising that discretion, preference for the first-filed suit "should yield to the forum in which all interests are best served."[51]

The parties dispute which action—Patco's declaratory action in California, or Buzzballz's infringement action here in Nevada—should be considered the first-filed one.  While Patco's original complaint was technically filed first, it concerned only the '904 patent.  Buzzballz argues that this action for infringement of the '441 patent (filed the day after that patent issued) was initiated before Patco amended its complaint to add a declaratory-judgment claim concerning that patent.  Patco responds that its amended complaint relates back to its original complaint, so Buzzballz's intervening action makes no difference.

"In determining whether newly alleged claims, based on separate patents, relate back to the date of the original complaint," the Federal Circuit directs courts to "consider the overlap of parties, the overlap in the accused products, the underlying science and technology, time periods, and any additional factors that might suggest a commonality or lack of commonality between the two sets of claims."[52]  The parties and products in Patco's original and amended complaints are the same, and the '904 and '441 patents cover the same topic: the shape and manufacture of Buzzballz's round containers.  So I'm inclined to find that Patco's amended complaint relates

---

[50] *Id.* (cleaned up).

[51] *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) (citation omitted).

[52] *Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1369 (Fed. Cir. 2019).

12

back to the original complaint, making it the first-filed action in this patent dispute. The rule thus favors transfer to the district presiding over Patco's declaratory action.

Regardless of the first-to-file rule, the interests of justice and comity compel transfer. Patco added its '441 claim as soon as practicable—that patent didn't exist when Patco first filed suit and, as Buzzballz points out, "disputes concerning patent validity and infringement are necessarily hypothetical before patent issuance."[53] It added its claim relating to that patent within 10 days of its issuance. Buzzballz provides no rational support for its argument that Patco is merely engaging in forum shopping by amending its complaint, then seeking to merge this action with its declaratory action. And Patco's case is no longer the only one between these parties being litigated in the Northern District—Buzzballz's trademark case has been transferred there as well.[54] The factual issues that arise in this patent case and that trademark case are sure to overlap, and it would serve judicial economy and comity to have one court preside over both cases.

Finally, I don't find relevant to this analysis Buzzballz's contention that Patco's California action may be dismissed based on Buzzballz's motion to dismiss that case for lack of personal jurisdiction.[55] First, Buzzballz doesn't cite, and I have not found, any Federal Circuit authority supporting Buzzballz's argument that potential lack of personal jurisdiction robs a case of its first-filed status. Indeed, the Federal Circuit in an unpublished opinion has refused to adopt such a rule, citing cases throughout the country that have refused to consider personal

---

[53] *GAF Building Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996).

[54] *See* ECF No. 34 in Case No. 1:23-cv-01115-RP (W.D. Tex.); *see also* 4:24-cv-04004-HSG (N.D. Cal) (transferred case).

[55] ECF No. 23 at 13; *see also* ECF No. 30 in Case No. 3:24-cv-01282-JD (N.D. Cal.).

jurisdiction when conducting a first-to-file analysis.[56] Second, even if the Northern District does dismiss Patco's case for lack of personal jurisdiction over Buzzballz, no one disputes that it will have jurisdiction over the defendant in this case: Patco. Regardless of whether Patco's declaratory action goes forward, for all of the reasons discussed supra, this action can and should proceed in California.

## Conclusion

IT IS THEREFORE ORDERED that Patco's motion for leave to file supplemental authority **[ECF No. 32] is DENIED** as moot.

IT IS FURTHER ORDERED that Patco's motion to transfer this case to the Northern District of California **[ECF No. 18] is GRANTED**. **The Clerk of Court is instructed to TRANSFER this case to the United States District Court for the Northern District of California and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
July 18, 2024

---

[56] *In re Seattle Spin Co., Inc.*, 817 F. App'x 987, 989 (Fed. Cir. 2020) (unpublished) (noting that the appealing party cites "no appellate court case that has held that first-filed status is determined by which court first secures personal jurisdiction over the parties") (citing *Penn Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189, 196 (1935) (giving preference to the court "whose jurisdiction and process are first invoked by the filing of the bill"); *Advanta Corp v. Visa U.S.A., Inc.*, 1997 WL 88906, at *3 (E.D. Pa. Fed. 19, 1997) ("The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute.")).